**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DAN WILSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-0080-CVE-TLW |
| | ) | |
| YUBA HEAT TRANSFER, LLC and | ) | |
| CONNELL LIMITED PARTNERSHIP, | ) | |
| a foreign limited partnership, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss Plaintiff's Third and Fourth Claims and Brief in Support Thereof (Dkt. # 6). Defendants seek to dismiss plaintiff Dan Wilson, Jr.'s claims for wrongful discharge in violation of the Oklahoma Occupational Health and Safety Standards Act (OOHSSA) and common law, and for retaliatory discharge. Plaintiff filed a response (Dkt. # 11), and defendants filed a reply (Dkt. # 16).

**I.**

Plaintiff was hired by defendants Yuba Heat Transfer, LLC (Yuba) and Connell Limited Partnership (Connell)[1] as a utility worker in April 2006. Dkt. # 2, at 3. On June 24, 2009, he was disciplined by defendants for "allegedly causing damag[e] to equipment while operating a crane." Id. He claims that he disputed the basis for the discipline, and that he initiated contact with the Oklahoma Human Rights Commission (OHRC) to make complaints about the wrongful discipline

---

[1] Plaintiff alleges that at all times relevant to his employment, Yuba was "wholly-owned and operated by [Connell]" and that "Connell exerted control over the management, operations, and labor relations of [Yuba]." Dkt. # 2, at 2. Defendants deny those allegations. Dkt. # 5, at 1-2.

and defendants' "unfair treatment of him due to his race." Id. Plaintiff claims that, on or about August 1, 2009, he also reported a safety concern to Jeff Bennett, his department manager, about a "burn table [that] was being used with the safety wrap surrounding it removed." The improper use of the table allegedly adversely affected his vision and caused damage to his eyes. Id. Plaintiff claims that he told Bennett that he tried to address the problem by wearing dark glasses, but that a direct supervisor told him to remove the glasses and "threatened his employment." Id. at 4.

On or about August 13, 2009, plaintiff filed a Charge of Discrimination form with the OHRC and the Equal Employment Opportunity Commission (EEOC), and on August 31, 2009, the EEOC sent its Notice of Charge of Discrimination to defendants regarding plaintiff's first charge. Id. Defendants terminated plaintiff on September 16, 2009, allegedly due to his improper operation of a crane on September 12, 2009. Id. Plaintiff claims that the incident to which his termination was attributed was "minor and resulted in no damage," and that he was treated differently than similarly situated employees who had "crane incidents of comparable seriousness." Id.

Following his termination, plaintiff filed this lawsuit, alleging claims for relief based on retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., wrongful discharge pursuant to the Oklahoma Anti-Discrimination Act (OADA), OOHSSA, and Oklahoma common law, and retaliatory discharge. Id. at 4-8. Defendants seek dismissal of counts three and four of the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Dkt. # 6.

**II.**

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action." Bell Atl. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleadings standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.3d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants claim that plaintiff's claim for relief based on wrongful discharge under OOHSSA and Oklahoma common law should be dismissed because neither is a valid source of the kind of public policy required for a claim of wrongful discharge under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989). Dkt. # 6, at 4-6. Moreover, they argue that the claim for relief based on retaliation is improper because plaintiff failed to allege facts sufficient to establish a cognizable legal theory. Id. at 6-7.

3

## A.

Oklahoma recognizes the common law at-will employment doctrine. Darrow v. Integris Health, Inc., 176 P.3d 1204, 1210 (Okla. 2008). Under that doctrine, "employers are free to discharge at-will employees in good or bad faith, with or without cause," thereby depriving employees of any right to sue for wrongful discharge. Id. Burk provides an exception to the doctrine, as it recognizes a tort claim for wrongful discharge where an employee is discharged for "refusing to violate an established and well-defined public policy" or for "performing an act consistent with a clear and compelling public policy." Id. The "clear mandate of public policy" must be "articulated by constitutional, statutory[,] or decisional law." Burk, 770 P.3d at 28.

Plaintiff brings his third claim for wrongful discharge in violation of the public policy set forth in OOHSSA and Oklahoma common law. Defendants argue that Griffin v. Mullinix, 947 P.2d 177 (Okla. 1997), is controlling as to plaintiff's claim based on OOHSSA. In Griffin, the Oklahoma Supreme Court considered whether a violation of OOHSSA could form the basis of a Burk tort claim. The Griffin court noted that amendments to OOHSSA in 1984 removed private employers from the statute's definition of "employer," and concluded that "an Act which . . . applies to public employers only is not an adequate basis upon which to premise the private tort action of a private employee." 947 P.2d at 179. It found that the "primary arbiter of Oklahoma public policy, the Oklahoma legislature, ha[d] not established the necessary 'well-defined' or 'clear and compelling' public policy that is required in making an exception to the employment-at-will doctrine." Id. at 180. The Griffin court "reiterate[d] the need to tightly circumscribe public policy exceptions to the employment-at-will doctrine and not create causes of action in an effort to create policy outside the legislative channels charged with that responsibility," and, consequently, found no articulation of

4

public policy with regard to private employers under OOHSSA. Id. Plaintiff concedes "that if the holding in Griffin is still good law in light of the Oklahoma Supreme Court's holding in Smith v. Pioneer Masonry, Inc., 226 P.3d 687 (Okla. 2009), then he cannot rely on OOHSSA policy declarations to support his third cause of action." Dkt. # 11, at 3. However, plaintiff argues that Pioneer Masonry "compels the conclusion that Griffin is no longer good law," and asks the Court to "predict that the Oklahoma Supreme Court would overrule Griffin." Id.

In Pioneer Masonry, the Oklahoma Supreme Court considered "whether an employer with [fewer] than fifteen employees can incur Burk tort liability for wrongful termination of an employee based on racial discrimination prohibited by the [OADA]." 266 P.3d at 688. The court reviewed its previous decision in Brown v. Ford, 905 P.2d 223 (Okla. 1995), which held that the OADA could not form the basis for a Burk tort claim against employers with fewer than fifteen employees because such employers were not covered by the OADA, and because an alternate remedy was available. 226 P.3d at 688-89. The court noted that "[f]or remedial purposes, discrimination victims comprise a single class and . . . [a] private right of action must be available to all members of this class" to comply with Article 5, § 46 of the Constitution of the State of Oklahoma. Id. at 689-90. Thus, because the OADA does not "afford a private right of action to all victims of discrimination," the Pioneer Masonry court overruled Brown and concluded that statutory exclusions as to a subset of employers in the OADA did not exempt those employers from the Burk tort remedy. Id. (citing Tate v. Browning-Ferris, Inc., 833 P.2d 1218, 1229-30 (Okla. 1992))(emphasis in original).

The Court is not persuaded that Pioneer Masonry should be read to overturn Griffin. Federal courts will not predict that a state supreme court will overrule its precedent "in the complete absence

5

of any indication from that court of its inclination to do so." Ag Servs. of Am., Inc. v. Nielsen, 231 F.3d 726, 735-36 (10th Cir. 2000)(emphasis in original). Pioneer Masonry held that

> one of the primary purposes of [the OADA] is to prohibit racial discrimination in employment and to make such discrimination a legal wrong. This purpose constitutes a general declaration of public policy on this subject. To vindicate violations of this policy, the Act provides statutory remedies in cases where employers have more than fifteen employees, while the common law provides a Burk tort to all victims of racial discrimination regardless of the number of employees.

The court made no mention of any other decision limiting the right to a Burk tort, and did not apply its decision to any other statute that limited a private right of action to a particular class of plaintiffs. The policy considerations underlying the discrimination claims at issue in Pioneer Masonry are very different than those regarding the reporting of unsafe working conditions, and, in the absence of an indication from the Oklahoma Supreme Court that it intended to overrule Griffin in line with its reasoning in Pioneer Masonry, the Court will not predict such an extension. Nielsen, 231 F.3d at 735-36; cf. Matthews v. LaBarge, Inc., 407 F. App'x 277, 283 (10th Cir. 2011)(unpublished)[2](post-Pioneer Masonry decision relying on Griffin to reject Burk tort claim by plaintiff against employer not covered by OOHSSA).

In the alternative, Wilson argues that Oklahoma decisional law establishes the public policy basis for his third claim for relief. Plaintiff's third claim for relief is based on his allegation that his complaints about unsafe working conditions "were a significant factor in [d]efendants' decision to discharge him from his employment." Dkt. # 2, at 6. He does not claim that he was terminated for wearing dark glasses in response to the unsafe conditions, or for refusing to work at an unsafe table. In his response to defendants' motion to dismiss, plaintiff argues that the "Oklahoma public policy

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

6

underlying a Burk tort . . . need not regard the workplace and/or reporting related thereto." Dkt. # 11, at 6 (emphasis in original). But, as defendants note, "that is precisely the allegation forming the basis of [p]laintiff's third claim for relief." Dkt. # 16, at 6 (emphasis in original). Plaintiff's statement that he need not establish a public policy "regarding the reporting of workplace safety concerns" is therefore not well taken; indeed, it seems that the violation of such a policy provides the only basis for his claim for relief.

However, "Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation" from wrongful discharge. Barker v. State Ins. Fund, 40 P.3d 463, 468 (Okla. 2001). Those protections apply equally to private and public employees. Darrow v. Integris Health, Inc., 176 P.3d 1204, 1216 (Okla. 2008). Under Barker, plaintiff must articulate "an established and well-defined public policy" in support of his reporting. 40 P.3d at 468. "[T]o distinguish whistleblowing claims that would support a viable common-law tort claim from those that would not, the public policy breached must truly impact public rather than the employer's private or simply proprietary interests." Darrow, 176 P.3d at 1214.

Plaintiff claims that Oklahoma law supports the proposition that employers have a duty to ensure safety in the workplace that rises to the level of a public policy.[3] In Hayes v. Eateries, Inc., 905 P.2d 778 (Okla. 1995), the Oklahoma Supreme Court suggested that an employee's reporting of "violations of health or safety laws" may be sufficiently in the public interest to warrant a Burk tort remedy. Id. at 786. Here, however, plaintiff did not report the violation of a health or safety law; instead, he complained of workplace conditions that "he believed" had caused damage to him

---

[3] In his complaint, plaintiff cited McMillan v. Barton-Robison Convoy, Co., 78 P.2d 789 (Okla. 1938), and Folmar v. Marriott, Inc., 918 P.2d 86 (Okla. 1996), as proof of a general duty of care on the part of an employer. Dkt. # 2, at 6.

7

but that he does not allege violated any law, outside of OOHSSA. Dkt. # 2, at 3. For that same reason, plaintiff's reliance on Silver v. CPC-Sherwood Manor, Inc., 84 P.3d 728 (Okla. 2004), and Todd v. Frank's Tong Service, Inc., 784 P.2d 47 (Okla. 1989), for the proposition that "an employer must provide a reasonably safe workplace for its employees," Dkt. # 11, at 7, is unavailing. Both of those cases considered Burk tort claims based on an employee's refusal to act in violation of specific statutory provision regarding workplace safety. They are not persuasive with regard to a policy in support of reports by an employee of conditions he perceived to be unsafe, but that were not necessarily contrary to any health or safety law. The Court's own research has similarly failed to uncover any decisional law that provides a clear statement of such a policy.[4]

However, plaintiff's argument that defendants' violation of their general duty to provide a safe workplace rises to the level of a public policy sufficient to support a Burk tort claim has not been rejected outright by Oklahoma courts. In Prince v. St. John Medical Center, 957 P.3d 563 (Okla. Civ. App. 1998), the court considered a Burk tort claim based on an employee's termination after she made complaints about workplace practices that she said "threatened safety and security,

---

[4]  In Vasek v. Board of County Commissioners of Noble County, 186 P.3d 928 (Okla. 2008), the court considered whether a public policy existed regarding the reporting of unsafe working conditions in public buildings by a public employee sufficient to support a Burk claim. Id. at 934. The court found such a policy in OOHSSA's whistleblower provision. 186 P.3d at 933. However, as discussed, OOHSSA does not provide the basis for a Burk cause of action to private employees like plaintiff.

Moreover, in Darrow, the court made the broad statement that "[e]mployees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further the public good by unmasking these breaches should by protected from an employer's retaliation." 176 P.3d at 1215-16. However, the court's holding was based on a private employee's reporting of conditions that violated particular public health provisions. Neither Vasek nor Darrow addressed the particular situation now before the Court, where an employee reported conditions that he alleges are contrary to a more general duty to provide a safe workplace.

8

implicating [the defendant's] duty of ordinary care as established by decisional law." Id. at 565. On summary judgment, the court found that although "decisional law has clearly placed a duty of care on [defendant], what that duty entails . . . is not as clear." Id. at 566. The court found a lack of evidence that the behaviors complained of were "serious or pervasive enough to raise [the defendant's] obligation of ordinary care . . . to the level of a clear mandate of public policy, beyond allegations of isolated acts of mere negligence." Id. Thus, the court noted that it need not "consider whether other conduct, either in isolation or as continuous, pervasive practice, might give rise to such a conclusion." Id. at 566 n.3. Similarly, Darrow declined to reach the question of whether a duty of care may constitute a public policy sufficient to support a Burk tort claim. The plaintiff in Darrow cited Oklahoma case law establishing a duty of care on the part of hospitals to their patients in support of his argument that "protecting the infirm" was a public-policy basis for his Burk claim. 176 P.3d at 1212 n.38. The Darrow court acknowledged that duty, which "requires such care and protection to a patient as that patient's condition requires." Id. However, the court found that because of its holding on other grounds, it did not "need . . . [to] address th[at] legal theory." Id.

Oklahoma employers have a duty to provide their employees with a "reasonably safe workplace." Young v. Bob Howard Automotive, Inc., 52 P.3d 1045, 1052 (Okla. Civ. App. 2002). The vague language in Prince and Darrow leaves unclear whether that duty of care may constitute a well-established public policy for purposes of a Burk claim. However, without a clearer indication from Oklahoma courts that such an argument is viable, the Court will not recognize a Burk tort claim based on a private employer's duty of care toward its employees. And outside a general duty of care owed by employers to their employees, the Court has not found any Oklahoma decisional law that would support a "well-defined, firmly established, state public policy" regarding internal

9

complaints by a private employee about workplace conditions that he perceives to be unsafe but for which he is unable to point to a violation of a specific state law or standard. Silver, 84 P.3d at 730; cf. Barker, 40 P.3d at 469-70 ("Oklahoma does not recognize a Burk tort for public employees who complain about the way an organization is managed when the complaints merely exhibit differences of opinion or dissatisfaction . . . . [s]omething more is required such as reporting fraudulent activity or criminal misuse of funds."). Griffin admonished courts to "tightly circumscribe public policy exceptions to the employment-at-will doctrine," 947 P.2d at 180, and the Court will not author a new exception to that doctrine in the absence of a clearer articulation by Oklahoma courts of an established public policy. Plaintiff's third claim for relief is therefore dismissed for failure to state a claim upon which relief may be granted.

**B.**

Plaintiff also brings a claim under the Oklahoma Retaliatory Discharge Act, OKLA. STAT. tit. 85, § 5 (the Act). Dkt. # 2, at 7. Section 5 provides, in relevant part, that no employer may "discharge . . . any employee because the employee has: [i]nstituted or caused to be instituted any proceeding under the provisions of this title." OKLA. STAT. tit. 85, § 5(A)(3). To establish a prima facie case of retaliation under § 5(A), a plaintiff must show "employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and consequent termination." Buckner v. Gen. Motors Corp., 760 P.2d 803, 806 (Okla. 1998)(emphasis in original). Defendants argue that plaintiff failed to state a claim for retaliatory discharge because the Act "does not provide a remedy for employees who merely report their subjective belief that they have suffered an on-the-job injury." Dkt. # 6, at 7. They

10

argue that plaintiff's complaint is lacking in that he does not allege that he did in fact suffer an on-the-job injury, that he obtained medical treatment for that injury, or that he instituted relevant proceedings within the meaning of the statute. Id. at 7-8.

In Buckner, the Oklahoma Supreme Court found that the phrase "institution of proceedings" in § 5 should be construed to include "actions taken by the claimant other than the filing of a claim." 760 P.2d at 809. Its analysis focused on whether the provision of medical attention to employees by employers constituted "instituting proceedings." Answering in the affirmative, it noted that "the Legislature . . . intended . . . § 5 to protect the employee during the period of vulnerability which may exist from the time the employer becomes aware of the injury to the time a claim is filed," and that an employee's seeking of medical treatment could, without further legal recourse on the part of that employee, constitute "institution of legal proceedings" for purposes of § 5. Id. at 811. The court cautioned that "[m]erely seeking and receiving first aid is not in and of itself" instituting proceedings, and that "[s]ome other evidence sufficient to persuade the trier of fact that the worker intended or reasonably could have intended to institute proceedings is necessary." Id. However, it held that provision of medical treatment by an employer, "when accompanied by circumstances . . . which would lead a reasonable employer to infer that a workers compensation claim would in all probability ensue, constitutes the institution of proceedings." Id.

At the outset, the Court notes that defendants' argument that plaintiff's fourth claim for relief must be dismissed because he has made no allegations that he "instituted or caused to be instituted any proceedings" is plainly irrelevant after Buckner. See Kennedy v. Builders Warehouse, Inc., 208 P.3d 474, 479 (Okla. Civ. App. 2008)("Buckner makes clear that the actual filing of a workers' compensation claim . . . is not fundamental to establish a prima facie case of retaliatory discharge

11

under [§ 5]"). Plaintiff is not required to allege that he actually instituted or caused to be instituted proceedings under title 85; he may also state a claim by alleging actions that would have put a reasonable employer on notice that such proceedings were likely.

Plaintiff contends that he has stated a § 5 claim based on his complaint to his supervisors regarding unsafe working conditions at the burn table and the injuries he incurred therefrom. In his complaint, he initially claims that the table's "arc adversely affected his vision" and "that he believed he had suffered damage to his eyes as a consequence." Dkt. # 2, at 3. Later in the complaint, he alleges that his reporting put defendants "on notice that he suffered damage to his eyes and was in need of medical care related thereto." Id. at 7. On a motion to dismiss, the Court is required to construe plaintiff's allegations in the light most favorable to him. In that light, the Court finds that plaintiff's complaint sufficiently alleges injury, as he claims that the working conditions "adversely affected his vision" and that he "suffered damage to his eyes and was in need of medical care." Whether he did sustain injury is a question of fact, and is inappropriate for disposition at this stage.

Similarly, plaintiff has sufficiently alleged that his employer was on notice of his need for medical care and his intention to institute proceedings. Although defendants would have the Court rule that an employee is required at the pleadings stage to include allegations that medical treatment was actually rendered, the Court will not so strictly construe Buckner. As noted, in that case the court interpreted § 5 to "protect . . . the period of vulnerability which may exist from the time the employer becomes aware of the injury to the time a claim is filed." 760 P.2d at 811. To find that an employee's allegations of the need for care are insufficient without allegations of provision of actual care may limit some of the protections in Buckner. Guided by the recognition that the

12

"[Oklahoma] Legislature has made the burden of establishing a prima facie case for retaliatory discharge relatively easy," the Court will not construe the requirements of § 5 to require allegations of the provision of actual medical treatment, and will take as true at this stage that plaintiff's reports of his condition to multiple supervisors put his employer on notice of the likelihood that he would initiate proceedings.

The Court recognizes the potential for abuse in providing protection to employees triggered only by an unsubstantiated complaint of injury. E.g., Buckner, 760 P.2d at 810-811 ("[m]arginal employees cannot insulate themselves from discharge by an opportune visit to the first aid station"). However, as in Buckner, such concerns are addressed by the additional requirement that, to prevail under § 5, a plaintiff must proffer evidence sufficient to support a finding that he intended or reasonably could have intended to institute proceedings at the time he made the complaint about unsafe conditions, and that his employer was on notice of that fact. Id. at 811; see also Barber v. Payless Cashways, Inc., 787 P.2d 1301, 1303 (Okla. Civ. App. 1990)(where employee notified employer of injury after the fact and did not think about filing for benefits until after his termination, he failed to show circumstances which would lead a reasonable employer to infer that a workers compensation claim would in all probability ensue). If plaintiff fails to make the requisite evidentiary showing, his claim will be subject to an adverse judgment at a later stage.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third and Fourth Claims and Brief in Support Thereof (Dkt. # 6) is **granted** in part and **denied** in part: it is granted as to plaintiff's third claim for relief; it is denied as to plaintiff's fourth claim for relief.

**DATED** this 28th day of July, 2011.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT